STATE OF CONNECTICUT *v.* HAROLD JACOBOWITZ

COTTER, C. J., BOGDANSKI, PETERS, HEALEY and PARSKEY, Js.

Argued October 9, 1980—decision released January 20, 1981

*Gilbert Shasha* and *Barry J. Ward,* for the appellant-appellee (defendant).

*Stuart M. Schimelman,* assistant state's attorney, with whom, on the brief, was *C. Robert Satti,* state's attorney, for the appellee-appellant (state).

PETERS, J. This appeal contests the propriety of a second substituted information by which the state, after the commencement of trial, charged the defendant, Harold Jacobowitz, with the crime of threatening after it had originally charged him with the crime of attempted murder. The defendant was also charged with a second count, attempted assault in the first degree, a charge not amended by

the second substituted information. The trial court, *Edelberg, J.,* granted the defendant's motion for acquittal on the assault count, and the jury found the defendant guilty of threatening. The defendant unsuccessfully moved for acquittal, for arrest of judgment and for a new trial. Thereafter he appealed from the judgment of conviction on the count of threatening and the state cross appealed from his acquittal on the count of assault.

The procedural history of this case is not in dispute. The state, by a single count information dated July 28, 1978, originally charged the defendant with attempted murder in violation of General Statutes §§ 53a-49 (a) (1) and 53a-54a (a). In response to the defendant's motion for a bill of particulars, the state on June 18, 1979, filed a first substituted information in two counts. The state charged, in the first count, that the defendant on or about July 11, 1978, at approximately 9:10 p.m., at his premises at Old Colchester Road, Montville, committed attempted murder in violation of General Statutes §§ 53a-49 (a) (2) and 53a-54a (a)[1] when, with intent to cause the death of another, he

---

[1] These statutes provide, in relevant part: "[General Statutes] Sec. 53a-49. CRIMINAL ATTEMPT: SUFFICIENCY OF CONDUCT; RENUNCIATION AS DEFENSE. (a) A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime he . . . (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime. (b) Conduct shall not be held to constitute a substantial step under subdivision (2) of subsection (a) unless it is strongly corroborative of the actor's criminal purpose."

"[General Statutes] Sec. 53a-54a. MURDER DEFINED. AFFIRMATIVE DEFENSES. EVIDENCE OF MENTAL CONDITION. CLASSIFICATION. (a) A person is guilty of murder when, with intent to cause the death of such person, he causes the death of such person . . . ."

pointed a deadly weapon, a revolver, at the victim and fired said weapon at the victim. The second count charged that the defendant, at the same time and place, committed attempted assault in the first degree, in violation of General Statutes §§ 53a-49 (a) (2) and 53a-59 (a) (3)[2] when, under circumstances evincing an extreme indifference to human life, he pointed a deadly weapon, a revolver, at the victim and fired said weapon at the victim. This first substituted information was the governing document pursuant to which the case went to trial.

At the close of the presentation of the state's case to the jury, the state asked for and received the permission of the court to file a second substituted information. This amended the first count by deleting the charge of attempted murder and charged instead the crime of threatening, in violation of General Statutes § 53a-62 (a) (1),[3] at Old Colchester Road in Montville, on or about July 11, 1978. The new information did not specify the hour at which the crime was alleged to have been committed, nor did it particularize the manner of its commission. Although the defendant took proper exception to the substitution of this new information, he requested neither a new bill of particulars nor a continuance.

---

[2] General Statutes § 53a-59 provides, in relevant part: "ASSAULT IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of assault in the first degree when . . . (3) under circumstances evincing an extreme indifference to human life he recklessly engages in conduct which creates a risk of death to another person, and thereby causes serious physical injury to another person."

[3] General Statutes § 53a-62 provides, in relevant part: "THREATENING: CLASS A MISDEMEANOR. (a) A person is guilty of threatening when: (1) By physical threat, he intentionally places or attempts to place another person in fear of imminent serious physical injury . . . ."

The evidence already adduced by the state at the time when the second substituted information was filed would have allowed the jury to find the following facts. The incident out of which the charges arose occurred at the premises of the defendant on Old Colchester Road in Montville. On July 11, 1978, at approximately 9 p.m., Thomas McKittrick, a New London deputy sheriff, went to the premises in order to serve the defendant with divorce papers. The defendant, when informed of the purpose of McKittrick's visit, abused him verbally and pointed a revolver at him. The defendant fired his revolver, but did not hit McKittrick, who had fallen to the ground. Although McKittrick heard the noise of a revolver's discharge, he did not see it being aimed or fired, and did not know whether he would have been hit had he not ducked. He was scared by this and ran to his vehicle in fear. The defendant followed him there, threw the divorce papers back into the car, and, revolver in hand, warned McKittrick that he would blow McKittrick's brains out if McKittrick told anyone about the incident.

The state was concerned that these facts might be insufficient to establish the requisite intent for attempted murder, when it discovered at trial that McKittrick could not testify as to where the gun had been pointed at the time of its discharge. Neither the weapon nor a bullet was ever found, nor could McKittrick say whether the revolver was firing blanks or live ammunition. McKittrick admitted that the defendant could have killed him had the defendant wanted to do so. Further, the defendant, shortly after the incident, spoke to friends of chasing someone away without hurting him.

The state put forward no further evidence after the contested amendment of the information. The defendant offered an alibi defense. The defendant and two of his business associates testified that they had been at an inn some 15-16 miles distant at the time of the incident. The theory put forward by the defense was that some other person with access to his house might have been involved in the altercation with McKittrick.

## I

In his appeal, the defendant raises two issues. Did the trial court err in permitting the state to substitute, after presentation of the state's case, a new information charging threatening rather than attempted murder? Did the trial court err in its charge to the jury concerning alibi testimony?

The basic principles that govern the state's right to amend its pleadings during the course of a criminal trial are well settled. Practice Book, 1978, § 624 provides, in relevant part: "After commencement of the trial for good cause shown, the judicial authority may permit the prosecuting authority to amend the information or indictment at any time before a verdict or finding if no additional or different offense is charged and no substantive rights of the defendant would be prejudiced." The state's right to amend must be limited to substitutions that do not charge the defendant with an additional or different offense because the defendant has a constitutional right to fair notice, prior to the commencement of trial, of the charges against which he must defend himself. See U.S. Const., amend. VI; Conn. Const., art. I § 8. Unless the original and the amended informations charge the defendant with the same crime, as was the case in *State* v.

*Wallace,* 181 Conn. 237, 435 A.2d 20 (1980), amendment is permissible only to charge a lesser included offense. The constitutional right to notice is satisfied as to lesser included offenses because, "where one or more offenses are lesser than and included within the one charged, notice of the one charged constitutes notice of any lesser included offenses. See *Paterno* v. *Lyons,* 334 U.S. 314, 320–21, 68 S. Ct. 1044, 92 L. Ed. 1409 (1948); *Walker* v. *United States,* 418 F.2d 1116, 1119 (D.C. Cir. 1969); *State* v. *Conklin,* 115 N.H. 331, 335, 341 A.2d 770 (1975); *State* v. *Daniels,* 223 Kan. 266, 271, 573 P.2d 607 (1977)." *State* v. *Rodriguez,* 180 Conn. 382, 402, 429 A.2d 919 (1980).

In the case before us, the central issue with respect to the substitution of the second amended information is, therefore, whether the crime of threatening is a lesser included offense encompassed within the originally charged crime of attempted murder. We have recently had a number of occasions to restate, in the context of instructions to the jury, what constitutes a lesser included offense. See *State* v. *Tinsley,* 181 Conn. 388, 396–97, 435 A.2d 1002 (1980), cert. denied, 449 U.S. 1086, 101 S. Ct. 874, 66 L. Ed. 2d 811 (1981); *State* v. *Morin,* 180 Conn. 599, 601, 430 A.2d 1297 (1980); *State* v. *Rodriguez,* supra, 402–403; *State* v. *Whistnant,* 179 Conn. 576, 588, 427 A.2d 414 (1980). The criteria we there developed, with the exception of the first criterion of a request for a jury instruction, are equally relevant here. A crime is a lesser included offense if, and only if, the following conditions of *State* v. *Tinsley,* supra, are met: "(2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the

lesser; (3) the evidence, introduced by either the state or the defendant, or by a combination of their proofs, justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser." For present purposes, it is the second criterion that is the most debatable. Is it possible, under the specific allegations of the information and the bill of particulars, to attempt to murder someone by pointing a gun at him and firing it without first having threatened or attempted to threaten him?[4]

It is difficult to characterize properly the relationship between a charge of attempted murder and a charge of threatening. Although there is obvious overlap between the two crimes, each requires proof of different elements: attempted murder under General Statutes §§ 53a-49 (a) (2) and 53a-54a (a) requires the state to show intentional conduct constituting a substantial step toward intentionally causing the death of another person; threatening under General Statutes § 53a-62 requires the state to show that the defendant, by physical threat, intentionally placed or attempted to place another person in fear of imminent serious physical injury. It is not the danger or risk of injury, but the victim's perception, which is essential to the latter crime. As the defendant argues, attempted murder does not require placing in fear, and it is possible to imagine an attempted murder, such as a shot

---

[4] General Statutes § 53a-62 provides, in relevant part: ". . . (a) A person is guilty of threatening when: (1) By physical threat, he intentionally places or attempts to place another person in fear of imminent serious physical injury . . . ."

from ambush, in which there has been no prior threatening act. The question thus posed is whether the particularized information in this case sufficiently gave notice of a face-to-face confrontation between the defendant and the victim when it charged the defendant with pointing a gun and firing it at the victim. While the evidence at the trial clearly established that the defendant and the victim were facing each other, and the information for attempted murder might have so charged, we hold that it did not do so. See *State* v. *Sylvester Brown,* 163 Conn. 52, 61-62, 301 A.2d 547 (1972), and compare *State* v. *Amaral,* 179 Conn. 239, 242-43, 425 A.2d 1293 (1979). In our recent restatement of the test of lesser included offenses in *State* v. *Tinsley* and *State* v. *Whistnant* we have allowed recourse to the evidence presented at the trial with regard to the third and fourth criteria there set out, but such evidentiary considerations do not enter into the second criterion, which is limited to the contents of the information (or the indictment) and the bill of particulars.

We conclude, therefore, that the trial court erred in permitting the state to substitute a new information charging the defendant with threatening rather than with attempted murder. We need not reach the defendant's second claim of error. The judgment rendered on the first count must be set aside.

## II

The state, in its cross appeal, alleges error in the trial court's acquittal of the defendant on the second count of the substituted indictment, the count charging the defendant with attempted assault in the first

degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-59 (a) (3). This claim is not cognizable.

The law of double jeopardy, as recently interpreted by the Supreme Court of the United States and by this court, bars judicial review of a judgment of acquittal. The prohibition against double jeopardy, that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb"; U.S. Const., amend. V; applies to state as well as to federal criminal proceedings. *Greene* v. *Massey*, 437 U.S. 19, 24, 98 S. Ct. 2151, 57 L. Ed. 2d 15 (1978); *Benton* v. *Maryland*, 395 U.S. 784, 795, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969); *State* v. *Flower*, 176 Conn. 224, 225, 405 A.2d 655 (1978). Because retrial after a judgment of acquittal would constitute double jeopardy, there can be no appellate review of any arguable errors underlying the judgment of acquittal. *Sanabria* v. *United States*, 437 U.S. 54, 69–70, 98 S. Ct. 2170, 57 L. Ed. 2d 43 (1978); *State* v. *Flower*, supra, 226.

The state's cross appeal is dismissed.

There is error in the judgment rendered against the defendant on the first count, that judgment is set aside, and the case is remanded with direction to render judgment that the defendant is not guilty.

In this opinion the other judges concurred.