[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a habeas petition brought by Claudious Channer who was, convicted after a jury trial in the Hartford Judicial District of one count of Robbery in the First Degree and one count of Conspiracy to Commit Robbery in the First Degree. He was sentenced by the court to confinement of twenty years on each count concurrent to one another but consecutive to a Federal sentence the petitioner was then serving. On appeal the petitioner's convictions were sustained. cf. State v. Channer, 28 Conn. App. 161
CT Page 1420-H (1992); cert den. 223 Conn. 921.
Mr. Channer filed an amended petition dated April 13, 1995 and captioned "Petitioner's Supplemental Habeas Corpus Complaint consisting of twenty pages and containing thirteen "Claims for Relief" which this court treats as thirteen counts. The petition also contains sixty one (61) numbered paragraphs. By pleading filed on May 10, 1995, the respondent moved to quash certain numbered paragraphs in the petition. On June 13, 1995 the court,Sferrazza, J., granted the Motion to Quash as to paragraphs 9, 15, 16, 17, 18, 19, 20, 21, 29, 30, 32, 33, 34, 35, 36, 45, 47, 49, 53, 55, 57, 59, and 61. Thereafter the respondent filed his Return by pleading dated June 23, 1995.
The practical effect of Judge Sferrazza's decision on the respondent's Motion to Quash was to leave remaining the petitioner's claims that he was rendered ineffective assistance of counsel by both his trial and appellate counsels, and that as a result of his counsels' ineffectiveness he was denied counsel at trial and on appeal in violation of both the State and the Federal constitutions. Also remaining is his claim that the State filed a substituted information after the trial had commenced without court permission and that if the substituted information had not been filed he would not have been convicted.
As to his claims regarding counsel, the petitioner asserts that his trial counsel was ineffective in a number of respects. He claims that trial counsel failed to investigate, interview and call certain witnesses at trial, failed to properly reserve a motion for a new trial, and failed to move for speedy trial while his case was pending. He also asserts that his trial counsel failed to object to the filing of a substituted information by the state and failed to file an appropriate discovery motion before trial. He claims that during the trial his counsel failed to object to the introduction of certain evidence. Finally, he claims that his trial counsel failed to guarantee an agreement the petitioner claims he reached with the State's Attorney's office that in return for the petitioner's willingness to plead guilty to certain charges in the United States District Court for the District of Connecticut all State charges were to be dismissed.
As to his appellate counsel, the petitioner alleges that she was ineffective in that she failed to raise certain issues regarding the identification procedures utilized by the police CT Page 1420-I before trial as well as the alleged misidentification of the petitioner at trial. Additionally he claims that appellate counsel failed to raise on appeal the failure of the State to give him a speedy trial. The petitioner claims also that appellate counsel should have raised on appeal an allegedly improper argument made by the State's Attorney to the jury in closing argument.
On November 11, 1995 the court conducted a hearing on the petitioner's claims during which the petitioner and other witnesses testified. Additionally, documents, including the transcript of the petitioner's criminal trial, were introduced as exhibits during the habeas trial. Based on the evidence adduced at the hearing the court makes the following findings and ruling:
The petitioner is currently a sentenced inmate in the custody of the Commissioner of Corrections.
On November 29, 1990 the petitioner was found guilty following a jury trial of the crimes of Robbery in the First Degree and Conspiracy to Commit Robbery in the First Degree for which he was sentenced by the court to the custody of the Commissioner of Corrections for a period of twenty years on each conviction, with those sentences to run concurrently to one other and consecutive to a Federal sentence the petitioner was then serving.
At the criminal trial the petitioner was represented by Attorney Jeremy Weingast and the State was represented by Assistant State's Attorney Paul Murray. Mr. Weingast testified at the habeas hearing that though he filed a Motion for Discovery on the eve of trial he had full access to the State's Attorney's file while the case was pending before trial. The petitioner offered no evidence that he was negatively impacted by the timing of his counsel's Motion for Discovery.
The petitioner claims that Mr. Weingast's performance was ineffective in that he failed to investigate, interview and call as witness at his criminal trial two individuals whose names are Everton Beckford and Anthony Syms. The petitioner claims that these two gentlemen, whose street names are purportedly "Fashion" and "Pinto" would have testified that it was they and not the petitioner who participated in the events which gave rise to the petitioner's arrest and subsequent conviction. The petitioner claimed that he told Mr. Weingast about these two individuals before his trial. At the habeas hearing Mr. Weingast acknowledged CT Page 1420-J that the petitioner had made reference to these two individuals to him before the trial. He also indicated that the petitioner was only able to give him the name of Mr. Beckford a.k.a. Fashion and was unable to give him an actual name for the individual he referred to as "Pinto". He was also unable to give Attorney Weingast precise information about how to contact these two individuals. While Mr. Weingast did make some inquiries regarding "Fashion" and "Pinto" before the trial, he testified at the habeas hearing that he thought it quite improbable that such individuals were likely to come forward to testify at trial that it was they, and not the petitioner, who committed the offenses. At the habeas proceedings the petitioner offered no credible evidence that either of these individuals was involved in the underlying criminal; behavior. Nor did either of them testify at the habeas trial.
During the course of the criminal trial the petitioner testified on his own behalf. He was able to offer testimony regarding his claim that "Fashion" and "Pinto" were involved in the incident.
Also testifying at the criminal trial were the robbery victims, Dawn Jones and Delroy Lewis. While the details of the incident are reported in the Appellate Court decision, the court notes that at the trial Mr. Lewis was emphatic in his identification of the defendant as one of the two men who stopped the car which he had been driving, threatened him with a gun and then stole his motor vehicle. cf. Respondent's Exhibit A, Trial Transcript pp. 145, 172. While the victim Jones was not able to make a positive identification of the defendant in court, she confirmed her pre-trial identification of a photograph of the defendant as one of the perpetrators. The petitioner offered no evidence that the pre-trial identification procedure had been suggestive. Neither of the victims testified at the habeas hearing.
The petitioner claims that Mr. Weingast's performance was ineffective in that he did not object to the State's proffer of evidence that the petitioner had purchased an Audi motor vehicle several days before the crime took place. At the trial the victim Jones testified that the perpetrators were driving a brown Audi. Respondent's Exhibit A, p. 44. The victim Jones testified that the Audi was silver or gold. Id at 132. The petitioner believes, therefore, that it was improper for the State to have been able to have introduced as evidence documents indicating that several days CT Page 1420-K before the crime the petitioner was involved in the purchase of a black Audi. As to the issue of ineffective assistance of counsel, it is clear from the trial record that Mr. Weingast did, in fact, object to questions posed by Attorney Murray to the defendant on cross examination concerning his purchase of an Audi motor vehicle several days prior to the date of the crime. cf. Respondent's Exhibit A, p. 363. Mr. Weingast also objected to questions posed by Mr. Murray concerning the details of the loan taken for the purchase of an audi. Id at 367. He also objected to questions relating to the source of funds utilized as a down payment for the vehicle. Id at 372. Having had all of his objections to testimony related to the defendant's participation in the purchase of an Audi motor vehicle overruled, Mr. Weingast did not, in fact, object to the proffer of the documentation of this purchase. Id at 374. Given the fact that the court permitted questioning on this topic as relevant to the State's claims concerning the use of an Audi motor vehicle during the commission of the crimes charged, counsel was not required to participate in an exercise in futility by objecting to the documents corroborating the oral testimony. Additionally, Mr. Weingast testified at the habeas hearing as to his belief that evidence that the petitioner had purchased an audi motor vehicle different in color from either of the victims' identifications could well have been beneficial to the petitioner at trial.
The petitioner claims that Mr. Weingast should have found, interviewed, and called as a witness an unnamed security guard who was in the vicinity of the criminal activity. Mr. Weingast testified at the habeas hearing that one of the victim's statements contained a reference to a security officer who was not identified by name. Mr. Weingast did not try to find or to interview this person. At the habeas hearing the petitioner offered no evidence concerning the identity of this person or that he would have testified at the criminal trial in any way helpful to his defense. At the criminal trial the victim Jones testified that after she had alighted from the victim Lewis' car, and Lewis had continued down a Hartford Street with the audi in pursuit, a security guard came to where she was standing and called for help on his portable radio. At trial, Jones was only able to identify the security guard as a white male, and she indicated that she saw him talking with a responding Hartford police officer. This court can not speculate that the security officer, even if he could have been found. would have offered evidence helpful to the petitioner at his criminal trial. CT Page 1420-L
In regard to the petitioner's claim concerning the timing and the manner of Mr. Weingast's motion for a new trial, Mr. Weingast testified that after the verdict but before sentencing he filed a motion for a new trial which the court denied on the basis that the issue he was raising was not properly the subject of a motion for new trial pursuant to Practice Book § 902. The court agrees. P.B § 902 affords one an opportunity to move for a new trial based on error. In this case, the petitioner was seeking a new trial not based on any trial error, but based on new evidence. It was, and the petitioner's claim that shortly after the trial the victim Jones recanted her identification of the petitioner as the perpetrator. In the event of newly discovered evidence the proper procedure to follow is to file a complaint for a new trial pursuant to the provisions of Connecticut General Statutes § 52-270. Mr. Weingast testified at the habeas hearing that he gave timely notice to the petitioner of this procedure and asked the public defender's office if it would assist the petitioner in this regard. The petitioner has presented no grounds on which he would have been entitled to a new trial pursuant to P.B. § 902. His counsel's failure to pursue that remedy was appropriate under the circumstances.
The petitioner also claims that Mr. Weingast failed to move for a speedy trial. At the habeas hearing the petitioner offered no evidence in support of this claim. A review of the trial transcript indicates that immediately prior to jury selection the petitioner made a claim to the court that he had filed a claim for a speedy trial pursuant to applicable provisions of the Interstate Agreement on Detainers. In pointing out this claim to the court, Attorney Weingast acknowledged that he had not been able to find a copy of any such request either in the State's file, the Clerk's file, his own file, or the prison file. Respondent's Exhibit A, p. 30. In response, Attorney Murray pointed out that the court file was devoid of any such motion. Id at 31. Attorney Murray also indicated that Mr. Channer, then a Federal prisoner, had been transferred to the custody of the Connecticut Commissioner of Corrections pursuant to the Interstate Agreement on Detainers in October of 1990 and that the State's obligation to provide a speedy trial to the petitioner commenced once he was actually in the State's custody. Id at 32. With the exception of this colloquy at the outset of trial proceedings the record before the habeas court is devoid of any information pertaining to the petitioner's claim regarding a speedy trial claim. CT Page 1420-M
Mr. Channer also alleges that Attorney Weingast failed to object to the filing by the State's Attorney of an amended information after the commencement of the trial. Practice Book § 623 indicates, in part, that before a trial has commenced the prosecutor may amend an information, or add additional counts or file a substitute information. The right to file amendments after the commencement of trial is governed by P.B. § 624 which, in essence, indicates that the court may permit such filings for good cause shown and only upon a determination that the proffered amendment does not add or change the offenses charged and does not prejudice any of the defendant's substantive rights. With respect to this claim, the trial transcript reflects that the petitioner was put to plea on a substituted information following jury selection but before the jury was sworn. Respondent's Exhibit A, p. 34. The Appellate Court has determined that for purposes of P.B. §§ 623 and 624, a criminal trial begins with the voir dire of the prospective jurors. cf. State v. Cole, 8 Conn. App. 545 (1986). As discussed in Cole, the purpose of this rule is to ensure that a defendant has fair notice of the charges against him at the time potential jurors are being questioned. The defendant's claim in this regard suffers two infirmities. At the habeas hearing the petitioner introduced no evidence concerning the timing of the filing of the substituted information. The fact that he was put to plea on a substituted information after jury selection does not dictate the conclusion that the information was filed at that time. From the review of the trial transcript it is possible to conclude only that the petitioner was put to plea on a substituted information after jury selection. Additionally, it is clear from a review of the transcript that the charging document had been filed by the State accusing the petitioner of two counts of Robbery in the First Degree and one count of Conspiracy to Commit Robbery in the First Degree by the time the jury panel was first introduced to the case. cf. Respondent's Exhibit A, p. 2. The petitioner was put to plea on precisely the charges the court explained to the jury panel before the beginning of the voir dire process. The petitioner has failed to prove that the State filed a substituted information after the commencement of trial.
Finally, as to Attorney Weingast, the petitioner claims that trial counsel failed to insure that an agreement he had made between himself and the State's Attorney that if he plead guilty to certain charges in Federal court the State charges would be dismissed. At the habeas hearing the petitioner produced no credible evidence that such an agreement ever existed. CT Page 1420-N
The petitioner's appellate counsel, Elizabeth Inkster of the Office of the Public Defender, also testified at the habeas hearing. She indicated that she did not pursue any claim on appeal regarding the identification of the petitioner by the victims because she thought there was sufficient evidence of identification at the trial for the jury to have found the petitioner guilty. She correctly recalled that at the trial the victim Lewis had been strong and consistent in his identification of the petitioner as the perpetrator. Additionally, she testified that she agreed with the trial court that the proper method for seeking a new trial on the basis of newly discovered evidence was through the vehicle of a complaint for a new trial brought pursuant to C.G.S. § 52-270. As a result she did not pursue this issue on appeal. The court agrees with Attorney Inkster's view of the law on that topic.
The petitioner also faults Attorney Inkster for not challenging the pre-trial photographic identification procedure. At the habeas hearing, Attorney Inkster testified that even though there had been no motion to suppress the out-of-court identification filed by trial counsel she viewed the photographs used in the pretrial photo array to determine if there was any basis for raising this issue on appeal. And she testified that she would have attempted to raise this issue on appeal if she had formed the belief that it had any basis. She concluded, however, that the array was not unduly suggestive. At the habeas hearing, the petitioner presented no evidence concerning the pre-trial identification procedure.
The petitioner also claims that Attorney Inkster should have raised on appeal the issue of improper argument made by the Attorney Murray in closing argument. At the habeas hearing, Attorney Inkster accurately testified that during closing argument in the criminal trial Attorney Murray argued to the jury that the witness Jones was not the kind of person who would come to court and tell the jury a lie. In his argument, Attorney Inkster agreed, counsel improperly vouched for a State's witness. Even though the comment was not objected to at the trial, Attorney Inkster testified that she reviewed the entire argument in order to made a determination whether to raise it as a due process claim. cf. Statev. Golding, 213 Conn. 233 (1989); State v. Russell, 25 Conn. App. 243
(1991). Based on her assessment that the comment was an isolated remark not part of a pattern of misconduct, and was not egregious, Atty Inkster decided not to pursue it on appeal. The CT Page 1420-O court finds no fault in this decision. The court in Russell made plain its view that . . ."We reiterate with respect to unpreserved due process claims that `due process is not to be regarded as a giant constitutional vacuum cleaner which sucks up any claims of error which may occur to a party upon microscopic examination of the trial record.'(citations omitted)". Russell at 254, n. 7.
As to whether it was faulty for trial counsel not to have objected to this comment, the defendant has offered no evidence that this lapse, if it was one, had any impact on the jury's ultimate determination of guilt. In reviewing the conduct of counsel at trial great deference has to be given to counsel's decisions regarding trial tactics and strategies. cf. Fair v.Warden, 211 Conn. 398 (1989), and cases cited therein. There are times when interrupting jury argument to make an objection, even a valid one, can backfire. The fact that such an objection might have been sustained does not stand for the proposition that it should have been made.
Finally, as to appellate counsel, the petitioner claims that she should have raised the issue that he was not given a speedy trial. The court has already discussed this issue as it pertained to the conduct of trial counsel. There was no evidence at trial that the petitioner had, in fact, filed a speedy trial claim. Nor was there any evidence that he was, in fact, denied a speedy trial. At the habeas hearing the petitioner provided no evidence to amplify this claim. The court finds that there was no reasonable basis for Attorney Inkster to raise this issue on appeal.
Connecticut has adopted a two prong test in reviewing claims of ineffective assistance of counsel. One making such a claim must prove that counsel's performance was deficient and that he was prejudiced by counsel's deficient performance. cf. Strickland v.Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, (1984);Johnson v. Commissioner, 218 Conn. 403 (1991). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct. and to evaluate the conduct from counsel's perspective at the time." Johnson, Id at 689.
One need not reach the ineffectiveness claim if it is easier to dispose of the claim on the basis that the claimant has failed to prove sufficient prejudice. Pelletier v. Warden, 32 Conn. App. 38
CT Page 1420-P (1993). In this case, the petitioner has satisfied neither prong. From the court's review of the trial transcript as well as the evidence adduced at the habeas hearing the court finds that the petitioner has failed to sustain his burden of proving that either trial counsel or appellate counsel inadequately represented him. Furthermore, he has offered no credible evidence that the outcome of the jury trial or his appeal would have been different if either counsel had performed differently in any of the ways he has claimed.
For the reasons stated, the petition is dismissed.
BISHOP, J.